Argued and submitted March 13, reversed and remanded for reconsideration
May 6, 1987

FRIENDS OF THE COLUMBIA GORGE, INC. et al,
*Petitioners,*

*v.*

LAND CONSERVATION AND
DEVELOPMENT COMMISSION,
*Respondent,*
PORT OF HOOD RIVER,
*Intervenor - Respondent.*

(86-ACK-014; CA A39560)

736 P2d 575

Richard P. Benner, Portland, argued the cause and filed the brief for petitioners.

Michael A. Holstun, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were

Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and David G. Ellis, Assistant Attorney General, Salem.

Jerry J. Jaques, Hood River, waived appearance for intervenor - respondent.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

WARDEN, P. J.

## WARDEN, P. J.

Petitioners seek review of an order of the Land Conservation and Development Commission (LCDC) which acknowledged the City of Hood River's comprehensive plan for Wells Island. They assert that the city violated Goal 5 by failing to complete its inventory of wildlife resources on the island and by allowing limited development without adequate consideration of the economic consequences.[1] We reverse and remand for reconsideration.

Wells Island is a small island in the Columbia River directly north of Hood River. Its eastern third is within the city limits. It became an island as a result of the filling of the pool behind Bonneville Dam, and it fluctuates in size, depending on the level of the pool. The island is covered with willow and cottonwood trees and meadows, where cattle formerly grazed in the summer. It is one of the best bird habitats in the Bonneville Pool portion of the Columbia Gorge. Many Canada geese nest, brood and graze on it, and it supports an active heron rookery at its western end. There are also other bird species, including several bald eagles, which use it regularly. The Port of Hood River owns the island.

Goal 5 applies to the city's protection of the natural and scenic resources of areas for which it plans. The goal and the rules which LCDC has adopted to explain the goal describe the procedure the city must use. It must first establish an inventory of Goal 5 resource sites, then identify conflicting uses for the sites and finally develop a plan to meet the goal. That plan may either protect the site fully by prohibiting conflicting uses, permit conflicting uses fully at the expense of the resource or permit limited conflicting uses while protecting the resource to some desired extent. The city is to determine which course to follow through an analysis of the economic, social, environmental and energy (ESEE) consequences of the various options. OAR 660-16-000 to OAR 660-16-010; *Collins v. LCDC,* 75 Or App 517, 520, 707 P2d 599 (1985).

The city identified heron and Canada goose habitat

---

[1] Petitioners also attack the specifics of the proposed development on the island. Because the reconsideration we require may result in changes in that development, we do not consider the objection.

uses of the island as the relevant Goal 5 resources. It then approved a plan, which the port had developed, to establish a small conference center and a nature interpretative center on the eastern third of the island, with a ferry connecting the island to the mainland. The plan would protect the Canada goose and heron areas, which are concentrated on the western portion of the island, and would create a new island to replace some of the Canada goose nesting and brooding area that would be lost. Although the plan is carefully and thoughtfully designed in many ways, petitioners have identified two basic flaws in the process leading to its adoption: The inventory of Goal 5 resources is incomplete and the analysis of economic consequences is inadequate. Because of those flaws, the city has failed to show that the plan complies with the goal.

The inventory of resource sites and the analysis of ESEE consequences which the rules require are not merely formal hurdles for the city to surmount; they are essential tools for the planning process. If they are inadequate, it is impossible to say that the resulting plans are adequate. The kind of inventory and ESEE analysis that will meet the requirements of the goal and the rules will necessarily vary depending on the nature of the resource in question and of the local government's capabilities. What matters is that they be adequate to form the basis of the local government's planning. It is not necessary for an inventory to include every possible resource, no matter how insignificant, in order to satisfy the goal. LCDC recognizes that; it does not require the local government to list unimportant resource sites. It also limits challenges to decisions not to list sites:

> "The local government is not required to justify in its comprehensive plan a decision not to include a particular *site* in the plan inventory unless challenged by the Department, objectors or the Commission based upon contradictory information." OAR 660-16-000(5)(a). (Emphasis supplied.)

LCDC argues that the rule allows a local government to "determine not to include particular *sites or resources* on the plan inventory based upon a determination that it [*sic*] is not important enough to warrant such inclusion." (Emphasis supplied.) It argues that no objectors challenged the city's determination not to include birds other than herons and Canada geese in the inventory and that the city was therefore not required to justify its decision to exclude those resources.

LCDC acknowledges that, if an objector had raised that objection during the acknowledgment process and had based it on contradictory information, the city would have been required to justify its decision.

■    LCDC's argument is based on a misreading of the rule. The rule allows a city to exclude a particular *site* from an inventory; it does not allow it to omit part of an identified *resource* from a site which it has decided to include. The rule's requirements for objections to the exclusion of a site thus do not apply to objections to an omission of part of a resource. The city properly included the resource site—the island—in its inventory. It had then to include *all* of the relevant resource which exists on the site. The island is a resource site, because it provides a habitat for birds; the city cannot simply decide to include only two of the many species of birds that make up that resource. The record indicates that those species include mallards, coots, mergansers, ospreys, hawks and bald eagles, as well as herons and Canada geese.[2] Of particular significance are the bald eagles (an endangered species) that nest near the eastern end of the island, where the proposed development would occur. Because the city failed to include the other species in its inventory, it also failed to consider the impact of the development on them. Therefore, its inventory was inadequate for it to plan properly; it must develop an adequate inventory and then reconsider its decision.

■    Part of the reason that the city chose to permit limited development of Wells Island is that it concluded from its review of the ESEE consequences that there would be significant economic benefits in doing so. However, the economic analysis is insufficient. It discusses the importance of tourism to the economies of the Columbia Gorge and of the city and includes estimates of the total number of tourists and the amounts that they spend per year. It also notes a lack of nature interpretative facilities and small-scale conference centers in the gorge. However, the city made no attempt to determine the number of visitors who might visit an interpretative facility on Wells Island, the number of conferences which might use the island, the cost of establishing and maintaining the facilities or the likely revenue from fees for use of

---

[2] The city had recognized the existence of these and other bird habitats in earlier submissions to LCDC.

the facilities. The proposed development will require significant investment; the port estimates the cost to provide adequate sewer and water lines at $150,000 and the cost of a ferry at $300,000. Whatever construction occurs on the island itself will require an as yet undetermined additional amount. There is no basis in the record from which the city can estimate what the economic consequences of that investment would be.

LCDC argues that the rule does not require a cost/benefit analysis and that the necessary economic analysis can be general in nature. The city's analysis, LCDC says, was sufficient for it to provide reasons to explain why it made its decision. OAR 660-16-005(2). The problem with the economic analysis is not that it fails to provide a sophisticated cost/benefit discussion; the planning process does not require the same level of information that an application for a loan might, for instance. The problem is that the analysis does not provide a basis for suggesting what the economic consequences would be. Because it provides no estimate of how many people might use the facilities or of the revenue that the facilities could be expected to generate, the analysis is inadequate to serve as a planning tool or to provide reasons to explain the city's decision. The city must reconsider.

Reversed and remanded for reconsideration.