Argued and submitted October 18, affirmed November 22, 1989

DEPARTMENT OF LAND CONSERVATION
AND DEVELOPMENT,
*Respondent,*

*v.*

YAMHILL COUNTY,
*Petitioner,*

*and*

BERNARDS et al,
*Petitioners.*

GERRARD et al,
*Respondents,*

*v.*

YAMHILL COUNTY,
*Petitioner,*

*and*

BERNARDS et al,
*Petitioners.*

(LUBA 89-040, 89-042; CA A61886)

783 P2d 16

John M. Gray, Jr., Yamhill County Counsel, McMinnville, argued the cause for petitioner Yamhill County. With him on the brief was Timothy S. Sadlo, Assistant County Counsel, McMinnville.

William J. Moshofsky, Portland, argued the cause and filed the brief for petitioners Elmer Bernards, Ishmael Duckett, David Van Bergen and J. Art Hebert.

John T. Bagg, Assistant Attorney General, Salem, argued the cause for respondent Department of Land Conservation and Development. With him on the brief were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Gabriella I. Lang, Assistant Attorney General, Salem.

Thomas G. P. Guilbert, Portland, argued the cause and filed the brief for respondents Judy Gerrard, Doug Parmeter, Melinda Lee-Van Bossuyt, Ruth Stoller, Les Miller and Historic Preservation League of Oregon.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Petitioners[1] seek review of LUBA's decision in these consolidated proceedings, in which it held that Yamhill County ordinance 479 violates Goal 5 and the implementing rule, OAR 660-16-000 *et seq.* We affirm.

In 1988, county adopted ordinance 466, entitled The Historic Landmark Preservation Ordinance (HLPO). As explained in LUBA's opinion:

"Section 3 of the HLPO sets out definitions of terms used in the ordinance. Section 5 of the HLPO establishes a process and criteria for county designation of a 'landmark,' and for removal of a landmark designation. Section 6 of the HLPO requires that a county permit be obtained before a designated landmark can be demolished or moved, and establishes procedures and criteria for the issuance of such permits. Section 7 of the HLPO requires that county approval be obtained before a designated landmark is altered or a new structure is built on a designated landmark site, and establishes procedures and criteria for obtaining such approvals. Other sections of the HLPO set out the ordinance's purpose and procedural provisions regarding citizen involvement, notice, public hearings, appeals, fees and enforcement." (Footnote omitted.)

Shortly after HLPO was enacted, county designated 102 sites as landmarks. Ordinance 479 was promulgated the following year. It amended HLPO to make the landowner's consent a condition precedent to landmark designation and to make an owner's request a conclusive basis for the revocation of a previous designation.

LUBA first concluded that the designation of landmark sites pursuant to HLPO "constitute[s] the County's inventory of historic resources under [Goal 5 and] OAR 660-16-000(5)(c)." LUBA rejected county's argument that a 1984-85 survey, rather than the HLPO designations, constituted the inventory. It explained:

"Background information in the county comprehensive plan states that the county carried out a survey of its historic resources in 1984-1985. However, no attempt was made at that time to analyze the survey data or to determine the

---

[1] Petitioner Yamhill County appears separately from petitioners Bernards, Duckett, Van Bergen and Hebert. Where differentiation is necessary, we will refer to "county" and to "individual petitioners."

historical significance of the surveyed sites. Thus, this 1984-1985 survey is *not* a plan inventory of historic resources, as described in OAR 660-16-000(5)(c)." (Footnote omitted; emphasis in original.)

LUBA concluded that the later HLPO designations met or came closer to meeting the requirements that the rule establishes for inventories. It then held that ordinance 479 violates the goal and the rule, because:

"Under OAR 660-16-000(5)(c), when information is available on the location, quality and quantity of a site, and the local government determines the site to have historic significance as a result of its data collection and analysis, it *must* include the site on its plan inventory. We conclude that making landowner consent a determinative criterion for whether a site will be included on the county's inventory of historic resources is not allowed by Goal 5 and OAR 660-16-000." (Emphasis in original; footnote omitted.)

■        County's first assignment of error is that LUBA erred by concluding that the designation of sites pursuant to HLPO, rather than the 1984-85 survey, constitutes county's Goal 5 historic resources inventory. In its second assignment, county argues that ordinance 479 does not affect the inventory process in the way that LUBA concluded and that the ordinance resolves the conflict between historic resources and owner interests consistently with Goal 5 and the administrative rule.

We need not decide the first assignment, because ordinance 479 violates Goal 5 and OAR 660-16-000 *et seq,* even if it cannot affect either of the putative inventories or the formulation of any inventory. We summarized the Goal 5 process in *Friends of the Columbia Gorge v. LCDC,* 85 Or App 249, 736 P2d 575 (1987):

"The goal and the rules which LCDC has adopted to explain the goal describe the procedure the city must use. It must first establish an inventory of Goal 5 resource sites, then identify conflicting uses for the sites and finally develop a plan to meet the goal. That plan may either protect the site fully by prohibiting conflicting uses, permit conflicting uses fully at the expense of the resource or permit limited conflicting uses while protecting the resource to some desired extent. The city is to determine which course to follow through an analysis of the economic, social, environmental and energy (ESEE) consequences of the various options." 85 Or App at 251.

■ County does not dispute that a planning jurisdiction may not give property owners the ability to decide unilaterally whether resource sites will be included on Goal 5 inventories. *See Collins v. LCDC,* 75 Or App 517, 707 P2d 599 (1985). It contends, however, that ordinance 479 does not do that, but instead constitutes a programatic conflict-resolution decision to allow conflicting uses fully, pursuant to OAR 660-16-010(2). County argues that, under OAR 660-16-020, the views of landowners must be given due regard in the formulation of Goal 5 programs and that:

> "Whether the owner of a historic resource objects to protection of that resource is a legitimate part of the ESEE Goal 5 analysis. It is within the province of a local jurisdiction to determine, based upon the analysis of ESEE consequences, that a conflicting use, i.e., exercise of property rights guaranteed to all other members of the community, is of sufficient importance that the resource need not be preserved."

In view of the basis for its decision, LUBA did not find it necessary to resolve that argument according to its terms. However, it commented in a footnote to its opinion:

> "Had the county amended the HLPO to make the choice of a program (1) to protect the resource site fully, (2) to allow conflicting uses fully, or (3) to limit conflicting uses, depend solely on the preference of the individual landowner, we seriously question whether such a program would comply with Goal 5 or OAR 660-16-010 and OAR 660-16-020. Although consideration of landowner desires is required under these rules, the focus in both rules is on resource *uses* and conflicting *uses.* The rules and Goal 5 apparently envision a process that examines the relative value and importance of competing uses. On a case-by-case basis, it seems obvious that the relative value of a particular inventoried historic site might well prevail over a conflicting use of much less importance or value. The rules clearly recognize that the opposite may also be true. However, an approach that allows the selection of a program to be based in all cases on the desires of the landowner, without also examining the comparative values of the particular property for historic or identified conflicting uses, would appear to be inconsistent with OAR 660-16-010, 660-16-020 and Goal 5." (Emphasis in original.)

We agree with LUBA. Even if we were to accept county's characterization of ordinance 479 as the adoption of an "allow conflicting uses fully" program, it does not satisfy

the requirements of OAR 660-16-010(2). The rule permits an "allow conflicting uses fully" approach "when the conflicting use *for a particular site* is of sufficient importance, relative to the resource site."[2] (Emphasis supplied.) Ordinance 479 does not provide site-specific resolutions of the conflict between historic values and ownership interests. It categorically subordinates all historic resources, or at least all otherwise qualified landmarks, to any owner's preference for non-regulation. In the last analysis, it is not relevant whether the ordinance affects the inventory or becomes a factor only at a later stage of the Goal 5 process; it is invalid at *any* stage of the process. *See La Pine Pumice Co. v. Deschutes Co. Bd of Comm.,* 75 Or App 691, 707 P2d 1263 (1985), *rev den* 300 Or 704 (1986).

■ The individual petitioners argue that LCDC lacked statutory authority to include a "historic landmark program" in Goal 5 and in OAR 660-16-000 *et seq* and that:

> "The Legislature has established a voluntary landmark program in ORS chapter 358, which negates any intention or authority for LCDC to establish a landmark program, voluntary or involuntary."

We disagree. The subject is within LCDC's regulatory authority. *See* ORS 197.005; ORS 197.225; ORS 197.230; *1000 Friends v. LCDC,* 292 Or 735, 744, 642 P2d 1158 (1982). The establishment of "voluntary programs" under ORS chapter 358, bolstered by tax incentives, does not evince a legislative intent to forego or prevent affirmative regulation under other statutes.

The individual petitioners also contend that the "consent requirement can be justified because the county is entitled to give weight to other goals such as Goal 9, the economic goal." ORS 197.340(1), on which the individual petitioners rely, provides:

> "The commission, the department and local governments shall give the goals equal weight in the planning process."

That statute would support an application of one goal, consistent with its own terms, that is influenced by the policy of another goal; here, for example, it might be proper for county to give appropriate weight to Goal 9 in resolving the

---

[2] Historic resources are site-specific, *ipso facto* and by rule. OAR 660-16-000(2).

conflict between the preservation of and the private interests in particular historical sites. However, the statute does not allow a frontal violation of Goal 5 for the purpose of giving preference to Goal 9. Indeed, the language of the statute is to the exact contrary.

The individual petitioners make two additional arguments that require no separate discussion.

Affirmed.