Argued and submitted January 29, reversed and remanded for further proceedings
April 18, 1990

BYRNES et al,
*Petitioners,*

*v.*

CITY OF HILLSBORO et al,
*Respondents.*

(89-065; CA A63163)

790 P2d 552

Scott O. Pratt, Portland, argued the cause and filed the brief for petitioners.

Jack L. Orchard, Portland, argued the cause for respondent Prendergast & Associates. With him on the brief was Ball, Janik & Novack, Portland.

No appearance for respondent City of Hillsboro.

Before Graber, Presiding Judge, and Riggs and Edmonds, Judges.

## RIGGS, J.

Petitioners seek review of LUBA's decision remanding the City of Hillsboro's disposition of respondent Prendergast's (respondent) application to alter a historical site and to relocate historical structures now located on the site, known as the Imbrie Farmstead.[1] Respondent filed its application in February, 1989. On April 11, the planning commission decided to delay approval for 60 days, and it imposed certain conditions for obtaining earlier approval. Petitioners appealed that decision to the city council, which affirmed it. Both the council and the commission concluded that, under section 132(5) of the city's Cultural Resource Management Ordinance, they had no authority to deny an application to alter, demolish or move a cultural resource. LUBA rejected petitioners' arguments that the ordinance should be construed to allow a denial or, alternatively, that it violates the city's comprehensive plan and Goal 5 if it cannot be so construed. Petitioners assign error to LUBA's rejection of those arguments.

Section 132(5) provides:

*"Application for Alteration, Demolition or Moving a Designated Cultural Resource*

"(a)   No designated cultural resource shall be altered, demolished or moved without prior approval of the Planning Commission.

"(b)   Cultural resource owners desiring to alter, demolish or move a cultural resource shall apply for a permit to the Planning Commission and shall provide all information considered necessary by the Planning Commission as part of the application.

"(c)   The Planning Commission shall hold a public hearing and shall evaluate the application with reference to the following actions:

"1.   the economic or structural necessity of the proposed action;

"2.   the extent of visible modification to the resource;

---

[1] The remand was based on one of petitioners' three assignments in their appeal to LUBA. LUBA rejected the other assignments, and petitioners contend that it erred by doing so. None of the parties challenges LUBA's ruling on the assignment that it found meritorious.

> "3.  the relationship of the proposed action to the resource's original character;
>
> "4.  the possibility of any alternative action which would reduce negative impacts on the cultural resource; and
>
> "5.  in the case of moving or demolition, the scheduling of redevelopment of the resource site.
>
> "(d)  The Planning Commission shall work with the applicant, interested citizens and technical staff to minimize the negative impact of the proposed action, wherever possible.
>
> "(e)  Approval of an application for alteration or demolition may be delayed up to 60 days by the Planning Commission if it deems additional information or consideration with the applicant necessary. Approval of the application may be conditioned to secure interior and/or exterior documentation of the site prior to the proposed action, to preserve selected architectural features and to preserve site landscaping. The Planning Commission may, however, approve an alteration or demolition permit at any time within the 60 day period if it feels the applicant has made an effort in good faith to retain, document, and/or preserve the culturally significant characteristics of the resource.
>
> "(f)  The City Council may extend a demolition delay by an additional 60 days at the request of the Planning Commission or an interested party.
>
> "(g)  Applications for alteration, demolition, or moving permits for a designated cultural resource which are complete and which are in compliance with all other City regulations and ordinances shall not be denied outright. If no action on an application has been taken by the Planning Commission within 60 days of submission of the completed application, the application shall be considered approved."

■   The substantive disagreement between the parties[2] centers on the phrase "shall not be denied outright" in subsection (g). Respondent contends that the phrase has a clear literal meaning and does not permit the city to deny an application. Therefore, respondent argues, the city is restricted to the options, delineated in subsection (e), of

---

[2] The city is a respondent, but it has not appeared.

approving an application, with or without conditions, or of delaying approval for up to 60 days, with or without conditions. Petitioners argue that, when read in the context of the ordinance and together with provisions of the city's comprehensive plan, the phrase does not preclude the city from denying an application. Petitioners also assert that respondent's reading of the ordinance produces absurd results. Although subsection (a) makes planning commission approval a condition precedent to alteration, demolition or movement, under respondent's interpretation subsection (g) would make it impossible for the commission to withhold approval. LUBA agreed with respondent. We agree with petitioners.

In our view, respondent and LUBA place undue emphasis on the phrase "shall not be denied outright" and seem to read that phrase in a vacuum. Subsection (g) does not contain an unqualified prohibition of "outright"[3] denials of applications. It makes approval contingent, *inter alia,* on the compliance of the application "with all other City regulations," which include the five criteria against which subsection (c) requires the planning commission to evaluate applications. They also include the comprehensive plan provision requiring the preservation, protection and maintenance of "open space, historic sites and structures" for "present and future residents of Hillsboro" and the surrounding community. It would be incompatible with that preservation policy for the city to be powerless to deny *any* application to demolish, alter or move a historical site or structure. *See DLCD v. Yamhill County,* 99 Or App 441, 783 P2d 16 (1989).

We therefore disagree with LUBA and respondent that subsection (g) prohibits the denial of applications. They also appear to have based their interpretation on the fact that subsection (e) does not enumerate the denial of an application as one of the courses available to the planning commission. However, we do not read that subsection as a comprehensive statement of dispositional options. It addresses the limited situations where approval of an application requires further consideration or further data and where approval is made subject to certain kinds of conditions. Indeed, to the extent

---

[3] The parties also dispute the meaning of "outright." Our interpretation of the provision does not turn on the meaning of that word.

that subsection (e) is relevant to the question, it favors petitioners' proffered interpretation. The city's ability to attach conditions and to delay approval would be a blunt sword indeed, if, ultimately, the city had no power of denial. We conclude that the city has authority under section 132(5) to deny the application and that LUBA must expand the scope of its remand to the city accordingly.[4]

█    LUBA also considered a jurisdictional issue that respondent raised before it but does not renew here, at least in jurisdictional terms. Respondent argued that the decision from which petitioners appealed, the city council's affirmance of the planning commission's 60-day delay of approval, was not a final decision. Rather, the final decision was the effective approval of the application, which occurred without further formal action 60 days after the commission's decision. LUBA disagreed. It reasoned that, under subsection (e), a planning commission decision to delay approval is final when made, subject to appeal to the council, and does not depend on the passage of the delay period to become final. LUBA further noted that the very fact that approval of an application ensues automatically "upon the expiration of the 60 [day]" delay period, "without further action by the planning commission or city council," means that the delay of approval rather than the approval itself is the final *decision*. We do not necessarily agree with that reasoning, insofar as it is intended as an interpretation of the ordinance. Indeed, our conclusion that the city has the ability to deny an application casts considerable doubt on the construction that a decision to delay approval can be final, without a later dispositive decision to approve or deny. Whether or not LUBA's analysis is correct as an *interpretation* of the ordinance, however, it does correctly reflect the way in which the city *applied* the ordinance to Prendergast's application.

Under these circumstances, the way in which the ordinance was applied rather than the way it should have been

---

[4] Our interpretation of the ordinance makes it unnecessary for us to address petitioners' argument that, if the ordinance were interpreted otherwise, it would be contrary to the comprehensive plan and Goal 5. We therefore do not comment on the arguments of the parties regarding the fact that the ordinance is acknowledged and regarding the effect of any inconsistency between the ordinance and the plan or the goal. However, as noted in the text, relevant plan provisions are among the "city regulations" with which the ordinance requires applications to comply.

applied is determinative of jurisdiction. The overriding issue that petitioners raise is that the ordinance requires the city to decide more than it did. It would be circular to dismiss petitioners' appeal for lack of finality of the city's action on the ground that the city was required to apply the ordinance in the way that they contend rather than the way that it did. Moreover, that finality question could not be resolved without simultaneously deciding the merits of the appeal, and a dismissal of the appeal would not compel the city to take further action consistently with our conclusion on the merits. We agree that LUBA had jurisdiction. *See City of Pendleton v. Kerns,* 294 Or 126, 653 P2d 992 (1982).

Reversed and remanded for further proceedings not inconsistent with this opinion.