Argued and submitted May 6, affirmed July 6, 1994

## FRIENDS OF FOREST PARK,
*Petitioner,*

*v.*

## LAND CONSERVATION AND DEVELOPMENT COMMISSION
and Oregon Concrete & Aggregate
Producers Association, Inc.,
*Respondents.*

(93-RA-876; CA A80305)

877 P2d 130

Neil S. Kagan argued the cause and filed the brief for petitioner.

John T. Bagg, Assistant Attorney General, argued the cause for respondent Land Conservation and Development Commission. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Paul R. Hribernick argued the cause for respondent Oregon Concrete & Aggregate Producers Association, Inc. With him on the brief was Black Helterline.

Before Deits, Presiding Judge, and Riggs and Haselton, Judges.

DEITS, P. J.

## DEITS, P. J.

■ Petitioner seeks review of the portion of LCDC's periodic review order that requires Multnomah County to repeat the Goal 5 process *ab initio* for a mineral and aggregate resource site as to which the county fully allowed conflicting uses over mineral and aggregate resources.[1] OAR 660-16-010(2). Petitioner argues that LCDC's order conflicts with Goal 5 and the goal's implementing rule, OAR 660-16-000 *et seq*, and that it is not supported by substantial evidence.

LCDC essentially held that the county's implementation of the Goal 5 process was faulty from the inception, beginning with the initial steps of identifying resources, conflicting uses and the impact area. Consequently, the remainder of the process could not be and was not adequately completed in the absence of that inadequately identified data. Petitioner contends that OAR 660-16-000(2) requires only "a description or map of the boundaries of the resource site and of the impact area to be affected, if different." Petitioner reasons that, because the county provided a description, it was in compliance with the rule and that LCDC violated the rule by requiring greater specificity in the county's description.

In *Columbia Steel Castings Co. v. City of Portland*, 314 Or 424, 840 P2d 71 (1992), the Supreme Court recognized that particularity in the identification and description of resource sites and conflicting uses is an indispensable prerequisite to conducting the remainder of the Goal 5 process, which must culminate in decisions as to resource uses and conflicting uses being made for specific sites, with reasons explaining why the decisions were made. 314 Or at 431-32. As LCDC explains in its brief here:

> "The county's omission makes an accurate and complete identification of conflicting uses impossible. Without knowing the geographic area that could affect the resource, the county lacks a basis upon which to look for and identify conflicting uses. Without identification of all conflicting uses, the remaining steps under the Goal 5 rule [cannot] be completed."

---

[1] The county is not a party before this court.

We conclude that LCDC acted within its authority and consistently with relevant law in concluding that the county had not adequately completed the Goal 5 process in connection with the resources, uses and site in question. We also conclude that LCDC's order is supported by substantial evidence in all respects.

██ Some of petitioner's other points require specific comment. First, it argues that the county was permitted and properly elected to protect uninventoried *"de facto"* habitat and scenic resources, as to which it had exercised the option to delay the Goal 5 process pursuant to OAR 660-16-000(5)(b), over aggregate resources that had been inventoried and subjected to Goal 5 analysis. Petitioner concedes that the county could not make programmatic decisions about the *de facto* resources *as* Goal 5 resources, but asserts that the county was nevertheless entitled to protect them as uses that conflict with the inventoried and analyzed Goal 5 aggregate resource. LCDC responds in its brief, and we agree, that

> "the county may not finally resolve the proper disposition of the inventoried Goal 5 aggregate resource on the basis of a belief that protection (in this case, use) of the aggregate resource would conflict with potential Goal 5 resources. * * * [The county's] decision, if upheld, is an invitation to avoid the goal by treating potential Goal 5 resources as conflicting uses."

Petitioner is not aided by its assertion that a conflicting use may be allowed fully on a Goal 5 resource site, whether or not the conflicting use is or involves another Goal 5 resource. Goal 5 resources must be inventoried and analyzed under the process established in the Goal 5 rule. OAR 660-16-000; OAR 666-16-005. Stated differently, a Goal 5 resource can be a conflicting use on the site of another Goal 5 resource, as petitioner contends, but the rule nevertheless requires such resources to be identified in the Goal 5 inventory process and considered under the rule's balancing process. Petitioner's position is contrary to the plain language and objective of the goal and rule. The Goal 5 process requires the local government to balance identified resources and uses and make choices as to which resources and uses should be protected. It would make no sense for the local government to make such choices without having before it the information

required by the Goal 5 rule. To quote from LCDC's brief again,

"[p]etitioner's assertion does not make much sense because it means that merely perceived resources may be the basis upon which to deny protection to a completely inventoried and valuable Goal 5 resource."

A theme that underlies petitioner's arguments is that LCDC's order has the effect of dictating programmatic planning decisions that are properly for the county to make. Specifically, petitioner characterizes the order as requiring the county to develop a program to protect mineral and aggregate resources at the site, although OAR 660-16-010 gives the county choices about the level of protection that the resource is to be given against conflicting uses — ranging from complete protection to none at all. We do not agree with petitioner's understanding of the order. The order requires the county to satisfactorily follow the *process* of the rule in arriving at its decision, but does not compel a particular *decision*.

The general theme of petitioner's argument has been a recurring one in the periodic review cases that have come to this court, and we have construed the statutes governing that process as conferring broad authority on LCDC. *Oregonians in Action v. LCDC*, 121 Or App 497, 854 P2d 1010, *rev den* 318 Or 170 (1993); *Yamhill County v. LCDC*, 115 Or App 468, 839 P2d 238 (1992). In any event, as we have noted, the basic premise underlying petitioner's contention that LCDC exceeded that authority here is mistaken.

Affirmed.