Submitted on record and briefs May 22, reversed on petition, affirmed on
cross-petition July 2, 1986

URQUHART,
*Respondent - Cross-Petitioner,*

*v.*

LANE COUNCIL OF GOVERNMENTS et al,
*Petitioners - Cross-Respondents.*

(LUBA 85-083; CA A39519)

721 P2d 870

Timothy J. Sercombe, and Harrang, Long, Watkinson &
Arnold, P.C., Eugene, filed the briefs for petitioners - cross-
respondents.

Alvin Urquhart, Eugene, filed the brief *pro se* for
respondent - cross-petitioner.

Before Richardson, Presiding Judge, Joseph, Chief Judge,
and Newman, Judge.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Petitioners Lane Council of Governments and the City of Eugene seek our review of LUBA's remand of petitioners' amendment to the acknowledged Eugene-Springfield Metropolitan Area General Plan.[1] The amendment created a "University/Research" land use designation and applied it to a 71-acre area near the University of Oregon. Twenty-six acres of the area were previously zoned "Parks and Open Space," and the remainder was zoned "Government and Education." The new designation

"* * * represents property which is located in proximity to the University of Oregon campus. It is primarily intended to accommodate light industrial, research and development, and office uses related to activities, research, and programs of the University of Oregon. The designation also allows for mixed use development, including a limited range of retail and service uses and multiple family dwellings. Commercial activities in this category are intended to serve the day-to-day needs of employees working in and nearby University/Research areas. Activities such as general retail and office will continue to be located in other appropriately designated areas. Development of land in this category can play a critical role in the diversification of the metropolitan area's economy by providing an opportunity to develop industrial activities which support and utilize research programs of the University of Oregon."

Respondent appealed to LUBA, asserting that the amendment was unlawful in a number of respects. LUBA rejected his other contentions, but it remanded the decision to petitioners on the ground that their findings did not adequately demonstrate why the area affected by the amendment should not be added to the plan's Goal 5 inventory as an open space site. If the area is added to the inventory, LUBA indicated, consideration will later have to be given to the resolution of the conflict between the open space use of the area and its University/Research use under the plan amendment. *See* Goal 5; OAR 660-16-000 *et seq.*

The area was not included on the plan's original Goal

---

[1] The area affected by the amendment is located in Eugene and the amendment was adopted by the city. Lane Council of Governments ratified the amendment pursuant to a regional coordinated planning arrangement. We use the terms "petitioners" and "respondent" to identify the parties as they are designated in this court.

5 inventory that was acknowledged by LCDC.[2] However, the area is designated "open space" on the plan diagram, and there was evidence in the amendment proceedings that its present use and some uses that were contemplated before the amendment indicate that that was an appropriate designation. LUBA noted that the "absence from an inventory of Goal 5 protected resources [does not preclude] a later determination that a site should be inventoried." It then concluded that, in view of the evidence pertaining to Goal 5 in the local proceedings on the plan amendment,

> "* * * the findings provide no explanation why the areas designated as Open Space on the Metro Plan diagram were not placed on the inventory of sites subject to Goal 5 other than the one reference to the original plan inventory. If the Open Space areas are 'needed,' Goal 5 requires they be placed on the inventory. Here, the findings do not show whether the Open Space areas are needed or whether they are not important enough to warrant inclusion on the plan inventory. OAR 660-16-000(5)(a) calls for findings in these circumstances:
>
> > " 'The local government is not required to justify in its comprehensive plan a decision not to include a particular site in the plan inventory *unless challenged by...objectors...based upon contradictory information.'* (Emphasis supplied.)
>
> "This deficiency in the findings warrants a remand."

Petitioners argue that they should not be required, as part of the plan amendment process, to reconsider the exclusion of the area from the original inventory that they prepared in adopting their acknowledged plan. They contend that the occasion for reexamining the goal compliance of comprehensive plan provisions that are not affected by a plan amendment is LCDC's periodic review under ORS 197.640 *et seq* rather than LUBA's review of an appeal from the amendment.

There is merit to both LUBA's and petitioners' positions, and there are corresponding problems with both positions. Carried to its extreme, LUBA's position would

---

[2] Goal 5 inventories are among the underlying documents that a planning jurisdiction must submit for LCDC's review in the acknowledgment process. OAR 660-03-010(2)(a); OAR 660-16-000 *et seq.* LCDC must necessarily approve the inventory in order to approve the plan as complying with Goal 5. Consequently, the Goal 5 inventory of a jurisdiction with an acknowledged plan is the equivalent of an acknowledged plan provision for purposes of the issues before us.

require a planning jurisdiction to undertake an extensive, if not comprehensive, goal rejustification of an acknowledged plan in conjunction with every plan amendment. On the other hand, if the inclusion of the affected area on the inventory cannot be reconsidered in connection with this plan amendment, the effect of the amendment could well be to make the non-resource use of the area an accomplished fact before the decisions whether to inventory it and whether to preserve it as a resource site could be made through the periodic review process.

ORS 197.835(4) provides, as pertinent, that LUBA "shall reverse or remand a decision to adopt an amendment to an acknowledged comprehensive plan * * * if the amendment * * * does not comply with the goals." Although it has been argued that the statute permits LUBA to conduct goal compliance review only of the amended provisions of a plan, the better reading of the statutory language—and the one we adopted in *1000 Friends of Oregon v. Jackson Co.,* 79 Or App 93, 718 P2d 753 (1986)—is that LUBA may also review unamended plan provisions to determine if the amendment affects their continuing consistency with the goals. Comprehensive plan provisions are interrelated, *see* ORS 197.015(5), and it is obvious that an amendment to one provision can have an impact on the meaning and application of other provisions. ORS 197.835(4) refers to the compliance of the *amendment* with the goals, not to the compliance of the *amended provisions* in a vacuum. As we said in *1000 Friends of Oregon v. Jackson Co., supra:*

"* * * [A] plan amendment *could* affect provisions of the plan that it does not directly change in such a way that they will have an application which is at odds with the goals and which they did not have at the time of acknowledgment. * * *" 79 Or App at 98. (Emphasis in original.)

However, the issue in this case differs from the one in *Jackson Co.* Here, the affected area was excluded from the inventory before the amendment was enacted, and the amendment does not affect the inventory. Indeed, the converse seems to be true, *i.e.,* the absence of the area from the inventory is what makes it possible for the new designation to be attached to the area without a Goal 5 resolution of the conflict between the area's open space use and the University/Research use called for by the amendment. *See* OAR

660-16-000(5)(a). LUBA's opinion posits that the existing designation on what is referred to as the "diagram," the actual use of the area and certain other *existing* factors militate in favor of the inclusion of the area on the inventory; however, none of those factors is a consequence of the amendment.[3] Those factors may demonstrate that, for reasons unrelated to the amendment, circumstances have changed since the acknowledgment. If so, ORS 197.640 to 197.647 make LCDC's periodic review the only method for correcting goal non-compliance that results from changes in circumstances after acknowledgment, when the noncompliance is not the product of an amendment to an acknowledged plan or land use regulation.[4]

The factors to which LUBA points may also indicate that the area should have been included on the inventory at the time of acknowledgment. If so, neither LUBA nor we can do anything about that now. We conclude that LUBA

---

[3] LUBA also pointed to findings by petitioner pertaining to Goal 5 resources other than open space. It is not clear to us how LUBA ties those findings into its remand, which we understand to be only for further findings concerning the inclusion of the area in the inventory as an open space site. In any event, our reasoning on the open space issue applies to the other Goal 5 resources on the uninventoried site as well.

[4] ORS 197.640(1) provides:

"After its decision to initially acknowledge a local government's comprehensive plan and land use regulations under ORS 197.251, the commission shall periodically review each local government's comprehensive plan and land use regulations to insure that they are in compliance with the goals and are coordinated with the plans and programs of state agencies. Periodic review shall be conducted in accordance with a schedule to be established by the commission, but unless requested at an earlier date by the local government:

"(a) No review shall be conducted before July 1, 1984;

"(b) No comprehensive plan and land use regulations shall be reviewed sooner than two years after the plan and regulations are acknowledged under ORS 197.251;

"(c) The first periodic review shall be two to five years after acknowledgment under ORS 197.251; and

"(d) All subsequent reviews shall be three to five years after the previous review."

Under ORS 197.640(3)(a), one of the bases for requiring corrective action through the periodic review process is:

"There has been a substantial change in circumstances, including, but not limited to, the conditions, findings or assumptions upon which the comprehensive plan or land use regulations were based, so that the comprehensive plan or land use regulations do not comply with the goals."

exceeded the permissible scope of its review by remanding on the basis of a defect in the inventory which is not directly or indirectly attributable to the plan amendment.

Respondent assigns two errors on his cross-petition, neither of which requires discussion.

Reversed on the petition; affirmed on the cross-petition.