Argued and submitted September 2, affirmed October 14, 1992

# YAMHILL COUNTY,
*Petitioner,*

*v.*

# LAND CONSERVATION
# AND DEVELOPMENT COMMISSION,
*Respondent.*

(91-RA-792; CA A72899)

839 P2d 238

Michael R. Campbell, Portland, argued the cause for petitioner. On the brief were Steven L. Pfeiffer and Stoel Rives

Boley Jones & Grey, Portland, and John M. Gray, Jr., Yamhill County Counsel, McMinnville.

Jas. Adams, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Deits and Durham, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Yamhill County seeks review of LCDC's periodic review order under *former* ORS 197.640 to *former* ORS 197.647.[1] We affirm.

The county had included as resources on its Goal 5 inventory, as revised for periodic review, the scenic waterway and watershed and potential municipal reservoir in the Walker Flat area. LCDC's order directed the county to add three other resources in the area to its inventory — fish and wildlife habitat, natural areas and wetlands — and to complete the Goal 5 and OAR 660-16-000 *et seq* process for those resources. The county contends:

> "LCDC, by making an independent evaluation of the significance of Goal 5 resources at Walker Flat, exceeded the scope of its periodic review authority under *former* ORS 197.647 and misapplied its rules implementing Goal 5. Although local governments must justify to LCDC their Goal 5 resource significance determinations, LCDC's scope of review is limited to the adequacy of the justification provided. The County provided an adequate justification for its Goal 5 significance determinations, but, even if it had not, LCDC could not decide for itself whether the resources were significant Goal 5 resources and impose its decisions on the County."

■ ORS 197.647(4) provided that, after completing the earlier phases of the periodic review process, LCDC was to issue an order:

> "(a) Affirming the final review order of the local government and terminating periodic review if the commission finds the final review order adequately responds to the applicable standards of ORS 197.640(3); or
>
> "(b) Requiring the local government to amend its acknowledged comprehensive plan and land use regulations to adequately respond to the standards of ORS 197.640(3)."

*Former* ORS 197.640(3) stated the standards that local governments were to apply in determining whether and how to

---

[1] Those statutes were repealed by Oregon Laws 1991, chapter 612, section 23. That 1991 act adopted an extensive revision of the periodic review statutes. The parties agree that the former provisions are applicable here.

assure or achieve continuing compliance of their comprehensive plans and land use regulations with the statewide land use planning goals.

OAR 660-16-000(4) provides:

"The inventory completed at the local level, including options (5)(a), (b), and (c) of this rule, will be adequate for Goal compliance unless it can be shown to be based on inaccurate data, or does not adequately address location, quality or quantity. The issue of adequacy may be raised by the Department or objectors, but final determination is made by [LCDC] or the Land Use Board of Appeals as provided by law."

The county reads the statute and the rule to confine LCDC's inquiry to the question of whether the local government has provided adequate explanations and justifications for its determination concerning the significance of a resource and, therefore, of the necessity for placing it in its Goal 5 inventory. However, the county maintains, LCDC has no authority to require it to add specific resources to the inventory. LCDC, in its argument to us, emphasizes the statutory and regulatory language that seemingly vests finality in its determinations and confers authority on it to establish affirmative requirements.

The language of the particular statute and rule is somewhat ambiguous but, in the context of the periodic review statutes and process, the objectives are not. The county states that to "construe *former* ORS 197.647(4)(b)" differently than it does "would be to transform local land use planning under statewide land use goals, which is the very essence of ORS chapter 197, into statewide land use planning." The county's understanding of the "essence" of ORS chapter 197, at least as it relates to local compliance with the statewide goals as initially determined or as periodically redetermined, is 180 degrees removed from what the legislature intended. ORS chapter 197 is replete with provisions that emphasize that it is LCDC's and the Department of Land Conservation and Development's responsibility to promulgate and implement statewide land use planning goals and to assure that local governments adopt legislation that complies with them. *See, e.g.,* ORS 197.005(4); ORS 197.040(2)(d); ORS 197.175(1) and (2)(a); ORS 197.250; ORS 197.251; ORS

197.320 *et seq*; *former* ORS 197.640(1); ORS 197.646. More-over, ORS 197.013 provides that, even after acknowledg-ment, "[i]mplementation and enforcement of acknowledged comprehensive plans and land use regulations are matters of statewide concern."

Unlike the land use decision-making process, where local governments apply their acknowledged legislation, sub-ject to LUBA's review for compliance with that legislation rather than the statewide goals, the acknowledgment and periodic review processes exist to test the sufficiency of local legislation and its compliance with the goals. The county's arguments appear to confuse the two contexts and to treat LCDC's task here as the equivalent of LUBA's in an appeal from a local land use decision.

■ That confusion is illustrated to some extent by the authority on which the county relies. For example, it cites *Urquhart v. Lane Council of Governments*, 80 Or App 176, 721 P2d 870 (1986), for the proposition that a "city need not consider uninventoried Goal 5 resources in making a post-acknowledgment" land use decision. That is a correct sum-mary of the holding in *Urquhart*; however, *Urquhart* involved LUBA review of a land use decision that affected an uninven-toried resource, which *LUBA* could not require to be added to the inventory in conjunction with the specific land use deci-sion before it. Far more salient here than the proposition for which the county cites *Urquhart* is our statement that "ORS 197.640 to 197.647 make LCDC's periodic review the only method for correcting goal noncompliance that results[, *inter alia*,] from changes in circumstances after acknowledg-ment." 80 Or App at 181.[2] The present case *is* a periodic review proceeding in which corrective action of the kind mentioned in *Urquhart* can be required. The question of goal compliance that is presented in periodic review proceedings is preeminently one of state law and local compliance, and LCDC, not the local government, determines whether the latter is in compliance. *See Ramsey v. City of Portland*, 115 Or

---

[2] We understand that the county relies on *Urquhart* in connection with an argument other than the one that we address. Nevertheless, although familiar with *Urquhart*, the county does not seem to appreciate its enormous relevance to the issue and the argument under discussion.

App 20, 836 P2d 772 (1992). We reject the county's first assignment.

The county's second assignment of error depends in the main on the arguments that it makes to support its first. It also advances one additional argument, which is not relevant under the facts and requires no discussion. Similarly, the county's third assignment demonstrates no error and need not be discussed.

■ In its fourth assignment, the county contends that LCDC erred by requiring it either to delete its plan policy pertaining to the scenic waterway designation of the Nestucca River and Walker Creek or "to make it clear that removal of the county's Scenic Waterway Overlay designation requires a plan amendment and a revised ESEE consequences analysis under Goal 5." The policy, as drafted by the county, provides that the river and creek have a scenic waterway designation, and

> "[s]o long as it retains its state designation [under ORS 390.805 *et seq*], the county recognizes Walker Creek *** as a significant Goal 5 resource. It is the county's intent to remove the designation of Walker Creek as a significant Goal 5 resource if the state scenic waterway designation is removed in the future."

The county contends:

> "Policy (c) makes plain that the County will recognize Walker Creek as a significant Goal 5 resource only as long as Walker Creek remains a state scenic waterway. If the state scenic waterway designation were removed, the County would act consistently with its comprehensive plan by removing the County's Scenic Waterway Overlay District from Walker Creek. Therefore, removal of the overlay district would not require a comprehensive plan amendment. *See Foland v. Jackson County*, 311 Or 167, 180, 807 P2d 801 (1991)."

The county's proposition and its reliance on *Foland v. Jackson County, supra*, reflect a misunderstanding that is similar to the problems with its reliance on *Urquhart v. Lane Council of Governments, supra*. The question in *Foland* was whether Jackson County's land use decision was an amendment to, or only an application of, an existing provision of its acknowledged comprehensive plan. The court reached the

latter conclusion and, therefore, the county's decision was reviewable by LUBA, *inter alia*, for compliance with the plan provision rather than the statewide goals. The issue here, very much the opposite of the one in *Foland*, is whether the county's plan provision complies with the goals. The county's argument emphasizes what action would be consistent with the plan policy as the county drafted it. That emphasis would end the inquiry at the point where, for purposes of periodic review, it begins. The question here is not what the county's plan *does* say, but what it *must* say to comply with the goals.

On its merits, LCDC's determination was correct. The fact that the creek is designated as a scenic waterway by a state statute may mean that the county is required to make a corresponding designation, but the converse does not follow. Regardless of whether the state legislature eventually eliminates the statutory designation, the county cannot change *its* plan without amending it and conducting the Goal 5 analysis necessary to support the amendment.

Affirmed.