Argued and submitted September 23, 1999, affirmed on petition; reversed and remanded with instructions on cross-petitions January 26, 2000

Martin PLOTKIN,
Robin Plotkin, O. Meredith Wilson, Jr.,
and Theodora Anne Wilson,
*Petitioners - Cross-Respondents,*

*v.*

WASHINGTON COUNTY
and Bob Powne,
*Respondents - Cross-Petitioners.*

(LUBA 98-133; CA A107171)

997 P2d 226

Jeffrey M. Batchelor argued the cause and filed the briefs for petitioners - cross-respondents Plotkin and Wilson.

Alan A. Rappleyea, Sr. Assistant County Counsel, filed the brief for respondent - cross-petitioner Washington County.

Stuart K. Cohen argued the cause for respondent - cross-petitioner Powne. With him on the brief was Copeland, Landye, Bennett and Wolf.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Kistler, Judge.

KISTLER, J.

Deits, C. J., concurring in part, dissenting in part.

**KISTLER, J.**

Petitioners appealed to LUBA from a Washington County hearings officer's preliminary approval of a 12-lot residential subdivision on a five-acre parcel. The parcel is located in an area that is designated "wildlife habitat" and that contains two wetland areas that have not been identified as resource lands in the county's comprehensive plan documents. LUBA rejected petitioners' contentions that the county's decision was inconsistent with provisions of its Community Development Code (CDC) requiring preservation of fish and wildlife habitat areas and setting certain dimensional requirements for residential developments. LUBA also rejected petitioners' arguments that the county's findings in connection with the foregoing provisions are not supported by substantial evidence in the whole record. LUBA, however, agreed with petitioners' argument that the county had erred in concluding that the proposed subdivision was not subject to the CDC provision regulating development in "riparian zones." Consequently, LUBA remanded the county's decision. Petitioners seek review and the county and respondent Powne cross-petition, each seeking reversal of the part or parts of LUBA's decision that are adverse to their positions.

Petitioners' arguments to us require little discussion. Their only assignment of error is that LUBA erred in holding that "there was substantial evidence in the record to support the hearings officer's conclusion that [the] proposed development complies with the Community Plan and the [CDC]." The arguments that petitioners advance under this assignment combine legal and evidentiary assertions that pertain to both the dimensional and the habitation preservation requirements. Given their assignment of error and the substance of their arguments, however, petitioners can prevail only if they succeed in demonstrating that LUBA erred in holding that the county's adverse findings were supported by substantial evidence in the whole record. Petitioners do not make that demonstration. *See Cusma v. City of Oregon City*, 92 Or App 1, 757 P2d 433 (1988).

■    The county's and Powne's cross-petitions present a more complicated question.[1] CDC 422 regulates "significant natural resources" and provides, in relevant part:

"422-2  Lands Subject to this Section

"Those areas *identified in the applicable* Community Plan or the Rural/Natural Resource Plan Element as Significant Natural Resources.

"Significant Natural Resources have been classified in the Community Plans or the Rural/Natural Resource Plan Element by the following categories:

"422-2.1   Water Areas and Wetlands - 100 year flood plain, drainage hazard areas and ponds, except those already developed.

"422-2.2   Water Areas and Wetlands and Fish and Wildlife Habitat - Water areas and wetlands that are also fish and wildlife habitat.

"422-2.3   Wildlife Habitat - Sensitive habitats identified by the Oregon Department of Fish and Wildlife, the Audubon Society Urban Wildlife Habitat Map, and forested areas coincidental with water areas and wetlands.

"422-2.4   Significant Natural Areas - Sites of special importance, in their natural condition, for their ecologic, scientific, and educational value.

"422-3   Criteria for Development

"* * * * *

"422-3.3   Development Within a Riparian Zone, Water Areas and Wetlands, and Water Areas and Wetlands and Fish and Wildlife Habitat:

"A.   No new or expanded alteration of the vegetation or terrain of the Riparian Zone (as defined in Section 106) or a

---

[1] In the balance of this opinion, we will focus on the county's rather than Powne's arguments. Both are to the same general effect, but the county's are framed in terms that come closer to reflecting our own view of the dispositive considerations.

> significant water area or wetland (as identified in the applicable Community Plan or the Rural/Natural Resource Plan Element) shall be allowed [subject to exceptions.]"

(Underscoring in original; emphasis added.)

Petitioners argue that the wetlands on the proposed development area are "riparian zones" that are subject to the developmental restrictions of CDC 422-3.3A. Conversely, the county argues that section 422 as a whole is applicable only to wetlands and other natural resources that, unlike those in question, have been identified as such through the Goal 5 process and, resultingly, have been designated as such in the county's comprehensive plan documents. It follows, the county reasons, that the restrictions in CDC 422-3 are inapplicable.

LUBA agreed with petitioners' interpretation. Although LUBA recognized that petitioners' interpretation was "somewhat awkward," it reasoned that their interpretation would do "far less damage to the language of CDC 422 than the interpretation offered by the county * * *, which would require essentially ignoring the references to Riparian Zones in CDC 422-3.3."

■ ˙ Because the context provides perspective on the text of CDC 422-3.3A, we begin with that subsection's context before turning to its text.[2] *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993) (both text and context may be examined at the first stage of analysis). As the county explains, CDC 422-2 specifically provides that the significant natural resources that are subject to the regulations and the protections of the "section" are those that are "identified" in the relevant component or components of the comprehensive plan. It does not appear to be disputed—and our review of the structure of the CDC at our disposal confirms—that the term "section" refers to CDC 422 in its

---

[2] In interpreting CDC 422-3.3, we do not defer to the county hearings officers' interpretation. *See Gage v. City of Portland*, 319 Or 308, 314-15, 877 P2d 1187 (1994) (the deference owed to county's interpretation of its ordinances does not extend to a hearings officers' interpretation). Rather, we determine independently what CDC 422-3.3 means. *See id.*

entirety. Hence, lands that are not identified in the plan, and that are therefore outside the regulatory ambit that CDC 422-2 defines, are not subject to regulation under CDC 422-3.3A or any other subsection of CDC 422.

The text of CDC 422-3.3A does not fit neatly within that context. As noted above, that subsection is intended to protect specified natural resources from development. It provides that, subject to certain specified exceptions, "[n]o new or expanded alteration of the vegetation or terrain of the Riparian Zone (as defined in Section 106) or a significant water area or wetland (as identified in the applicable Community Plan or the Rural/Natural Resource Plan element) shall be allowed * * *." The text can be read in one of two ways. It could be read, as LUBA did, to say that only those wetlands that are listed in a community plan will be protected from development but all riparian zones, regardless of whether they are listed in a community plan, will be protected. Read that way, however, CDC 422-3.3A would protect unlisted riparian zones, contrary to the larger design of CDC 422, which contemplates that only listed resources will be protected.

A second reading is textually permissible. CDC 422-3.3A protects riparian zones "as defined in Section 106" of the Code. Section 106 in turn defines a "riparian zone" as "[t]he area, adjacent to a water area, which is characterized by moisture dependent vegetation." CDC 106.185.[3] In light of that definition, CDC 422-3.3A can be read as applying only to wetlands identified in a community plan and adjacent riparian zones; that is, the reference to riparian zones in CDC 422-3.3A does not extend protection to all riparian zones regardless of whether they are listed in a community plan. Rather, the reference makes clear that if a wetland or water area is listed in a community plan, then the adjacent moisture dependent vegetation, as defined in section 106, will also be protected from development.

_____

[3] At a minimum, the riparian zone extends 25 feet from either side of the water wetland or watercourse's channel. CDC 106.185. If a wetland or watercourse has no discernible channel, then the riparian zone shall be measured "from the center of the topographic trough, depression or canyon in which it is located." *Id.*

LUBA declined to adopt the second interpretation, which the county advanced, because it concluded that the county's interpretation failed to give effect to the term "riparian zones" as used in CDC 422-3.3A. We disagree. The county's interpretation simply recognizes that the regulation of riparian zones in CDC 422-3.3A is limited in the same way that all of the regulations in the section are limited. They apply only to resource areas that are identified in the plan. Not only does the county's interpretation give effect to the term "riparian zones," but it is also consistent with the context in which the county placed that term.

As noted above, CDC 422, as a whole, is directed at protecting listed resources. Listing a resource in a community plan both reflects the county's judgment that the resource is significant and provides protection for listed areas against development. If the unlisted water area is not significant enough in the county's view to deserve protection, then it is somewhat awkward, as LUBA acknowledged, to interpret the county's ordinance to say that an unlisted adjacent riparian zone is. To be sure, the county could have chosen to protect riparian zones without regard to whether they are listed, but including the term within a section devoted to protecting listed resources demonstrates that the county's rather than petitioner's interpretation is the correct one.[4]

The county's interpretation of CDC 422 is also consistent with our cases that have addressed the application of statewide planning Goal 5—which CDC 422 implements—in situations analogous to this one. In *Dept. of Transportation v. Douglas County*, 157 Or App 18, 22, 967 P2d 901 (1998), we adhered to our earlier decision in *Urquhart v. Lane Council of Governments*, 80 Or App 176, 721 P2d 870 (1986), and summarized it as holding

---

[1] Petitioners contend, as an alternative to their principal argument, that the area in question is designated wildlife habitat in the plan; hence, they reason, the property *is* identified as *a* Goal 5 resource area in the plan, and the regulations pertaining to *all* resources in CDC 422 are therefore applicable to it. We disagree. Both Goal 5 and CDC 422 are to the clear effect that the various resources and resource sites they contemplate are to be inventoried, evaluated and regulated separately. To illustrate, Goal 5 allows local planning jurisdictions, after proper consideration, to afford differing levels of protection to different identified resources and resource areas. *See* OAR 660-023-0040.

"that LUBA lacked authority, in reviewing a local plan amendment that allowed or facilitated a nonresource use, to consider whether Goal 5 required that the area in question be added to the county's inventory under that goal. We explained that the area had not been included in the previously acknowledged Goal 5 inventory, that the area had been 'excluded from the inventory before the [plan] amendment was enacted,' and that any reassessment of the area's omission from the inventory must occur during [the Land Conservation and Development Commission's] periodic review of the locality's compliance with the goals rather than in the appeal from a particular land use decision that was consistent with the acknowledged inventory as it stood."[5]

Our decision in *Urquhart* does not compel the adoption of the county's interpretation, but it confirms that the county's interpretation is consistent with the goals reflected in both CDC 422 and Goal 5. In sum, we agree with the county that CDC 422, by its own terms and in keeping with the statewide goal that it implements, applies only to resource lands that have been inventoried pursuant to Goal 5 and identified accordingly in the county's acknowledged plan documents. Because the wetland areas in question are therefore not subject to CDC 422, LUBA erred in reaching the contrary conclusion.

Affirmed on petition; on cross-petitions, reversed and remanded with instructions to affirm the county's decision.

**DEITS, C. J.,** concurring in part and dissenting in part.

I agree with the majority's disposition and reasoning on the petition. On the cross-petition, however, I agree with LUBA that the developmental restrictions in riparian zones under CDC 422-3.3 are applicable here, and I dissent from the majority's holding that LUBA erred in that respect.

___

[5] Like the local legislation in *Urquhart*, Washington County's land use legislation is acknowledged. We also note that LCDC's current Goal 5 rule, OAR 660-023-0250, contains provisions that are identical in their operational effect to that of our holding in *Urquhart*.

The essence of the majority's reasoning is that the regulations in CDC 422-3.3 are limited by and coextensive with the types of resources and resource areas that CDC 422-2 enumerates and describes as being identified in the county's comprehensive plan. However, CDC 422-3.3 expressly includes "riparian zones" among the areas for which it establishes developmental criteria, notwithstanding the fact that riparian zones are not among the types of areas that are referred to in CDC 422-2 as being identified in the plan. Moreover, CDC 422-3.3 describes the "riparian zones" it contemplates as those "defined in [CDC] 106," a section of the county *land use regulations*, while the other types of areas that are subject to CDC 422-3.3 are described in it as ones that are "identified in the applicable [*comprehensive plan* documents]." (Emphasis added.)

I therefore agree with LUBA that the county's interpretation, and now the majority's here, renders the term "riparian zones" in CDC 422-3.3 meaningless. That interpretation is not only contrary to the principle of statutory construction that legislative language should not be treated as superfluous and a nullity. It is also contrary to common sense. Why would the persons who enacted the ordinance have expressly included "riparian zones" in CDC 422-3.3 if not to regulate them in accordance with the express terms of that subsection? Indeed, that is precisely what CDC 422-3.3, by its own terms, clearly does.

If, as the majority believes, CDC 422-2 creates any ambiguity, then that ambiguity can as readily be resolved by giving effect to the clear terms of CDC 422-3.3 rather than by reading CDC 422-2 in a way that substantially eviscerates the other subsection. The majority acknowledges that CDC 422-3.3 *can* be interpreted in the way LUBA did and I would interpret it, and that the intended objective of the subsection is "to protect specified natural resources from development." 165 Or App at 251. "Riparian Zones" are among the resource areas that the subsection expressly protects. I find nothing compelling in the reasons that the majority offers for selecting an interpretation of the ordinance that disregards that express language and undermines the legislative intent.

The majority seeks to bolster its conclusion by reliance on *Urquhart v. Lane Council of Governments*, 80 Or App 176, 721 P2d 870 (1986). That case holds that the omission of an area from a locality's acknowledged comprehensive plan or Goal 5 inventory may not be successfully challenged in an appeal from a particular land use decision that allows a non-resource use in the area. That holding is simply an application of the general principle that, after acknowledgment, the land use decisions of a local government are measured for compliance with its plan and land use regulations rather than the statewide goals. *Urquhart* has no bearing on the issue here of whether the county's own acknowledged land use regulation applies according to its terms to a kind of resource area that is specifically included in the regulation, albeit not in the plan. The only question here is what the county's land use regulation means. More specifically, the question is whether the applicable provision, CDC 422, read as a whole, makes the protection that one of its subsections expressly confers on riparian zones illusory. For the reasons stated above, I agree with LUBA's answer, and I respectfully dissent.