Argued and submitted November 5, 2019, affirmed January 15, petition for review denied May 21, 2020 (366 Or 492)

CENTRAL OREGON LANDWATCH,
*Petitioner,*

*and*

Thomas BISHOP
and Dorbina Bishop,
Trustees of the Bishop Family Trust,
*Intervenors-Petitioners below,*

*v.*

DESCHUTES COUNTY
and Tumalo Irrigation District,
*Respondents.*

Land Use Board of Appeals
2019011; A172110

457 P3d 369

Petitioner seeks judicial review of a final order of the Land Use Board of Appeals (LUBA) affirming Deschutes County's approval of an amendment to its acknowledged comprehensive plan. Petitioner assigns error to LUBA's determination that a comprehensive plan amendment does not require the county to revisit its prior determinations that the subject property is not agricultural land as defined by Statewide Planning Goal 3 when the property was not included in the county's acknowledged Goal 3 inventory. *Held*: A local government's post-acknowledgement plan amendment is not reviewable for compliance with a statewide planning goal unless the potential goal noncompliance is a consequence of the amendment. Accordingly, LUBA correctly determined that the county was not required to re-evaluate whether the subject property was agricultural land subject to Goal 3 when the county was amending its acknowledged plan to change the subject property's designation from one non-Goal 3 designation to another.

Affirmed.

Rory Isbell argued the cause and filed the brief for petitioner.

Garrett Chrostek argued the cause for respondents. Also on the brief were Bryant, Lovlien & Jarvis, P.C., and D. Adam Smith.

Before Lagesen, Presiding Judge, and Egan, Chief Judge, and Powers, Judge.

EGAN, C. J.

Affirmed.

**EGAN, C. J.**

Petitioner Central Oregon Landwatch seeks judicial review of an order of the Land Use Board of Appeals (LUBA) that affirmed respondent Deschutes County's approval of an amendment to its acknowledged comprehensive plan. Petitioner assigns error to LUBA's determination that a comprehensive plan amendment does not require the county to revisit its prior determinations that the subject property was not agricultural land as defined by Goal 3. We affirm.

## I. STANDARD OF REVIEW

We review LUBA's order to determine whether it is "unlawful in substance or procedure[.]" ORS 197.850(9)(a). A LUBA order is unlawful in substance "if it represent[s] a mistaken interpretation of the applicable law." *Mountain West Investment Corp. v. City of Silverton*, 175 Or App 556, 559, 30 P3d 420 (2001).

## II. BACKGROUND

We begin with the legal context of the dispute, including the history and requirements of Goal 3. We then generally describe the procedural history of the county's approval of Tumalo Irrigation District's application and the appeal to LUBA. We later supplement our discussion of the facts as necessary to address the parties' contentions, taking the facts from LUBA's opinion and order.

A. *Statewide Planning Goals and Acknowledged Comprehensive Plans*

In 1973, the Oregon legislature adopted its statewide land use planning program and created the Land Conservation and Development Commission (LCDC). ORS 197.030(1). LCDC establishes and implements statewide polices for land use through the adoption of planning goals, which are mandatory and binding on local governments. ORS 197.040(2); ORS 197.015(8).

Local governments must adopt comprehensive plans that comply with the statewide goals and submit those plans

to LCDC for review. ORS 197.175(2)(a). A "comprehensive plan" is

> "a generalized, coordinated land use map and policy statement of the governing body of a local government that interrelates all functional and natural systems and activities relating to the use of lands, including but not limited to sewer and water systems, transportation systems, educational facilities, recreational facilities, and natural resources and air and water quality management programs."

ORS 197.015(5). If LCDC, after reviewing the comprehensive plan, determines that it is in compliance with the statewide goals, it acknowledges the plan. ORS 197.015(1) (defining "acknowledgment"). After a local government's plan is acknowledged by LCDC, the local government shall "make land use decisions * * * in compliance with the acknowledged plan." ORS 197.175(2)(d). Deschutes County's comprehensive plan is an acknowledged plan.

## B.  *Goal 3 Inventories*

The statewide goal at issue in this case, Goal 3, was enacted "to preserve and maintain agricultural lands for farm use." *VinCEP v. Yamhill County*, 215 Or App 414, 426, 171 P3d 368 (2007) (comparing the purpose of Goal 3 to other statewide planning goals). As relevant here, "agricultural land" is defined under Goal 3 to include "[l]ands classified by the U.S. Natural Resources Conservation Service (NRCS) as predominantly Class I-IV soils in Western Oregon and I-VI soils in Eastern Oregon." OAR 660-033-0020(1)(a)(A).

Goal 3 requires that land that meets the definition of agricultural land be inventoried as such. OAR 660-033-0030(1). Land that is in a local government's Goal 3 inventory must be restricted to uses set out in the Goal 3 rules. *See* OAR 660-033-0120 (identifying authorized uses of agricultural land). Under Deschutes County's comprehensive plan, all lands that meet the definition of agricultural land must be zoned Exclusive Farm Use (EFU).

A local government may adopt an exception for nongoal uses of specific properties in the government's statewide goal inventory if certain requirements are met. ORS

197.732(2) (setting out the requirements for adopting an exception). Under Goal 3, an "exception area" is "an area no longer subject to the requirements of Goal 3 or 4 because the area is the subject of a site[-]specific exception acknowledged pursuant to ORS 197.732 and OAR chapter 660, division 4." OAR 660-033-0020(6).

C.   *Post-Acknowledgement Plan Amendments*

After a comprehensive plan is acknowledged, a local government may amend it. ORS 197.015(10)(a)(A) (defining "land use decision" to include a "final decision or determination made by a local government or special district that concerns the *** amendment *** of [a] land use regulation").

A post-acknowledgement plan amendment (PAPA) is reviewable for "compliance with those land use goals applicable to the amendment," as well as for compliance with the acknowledged plan. ORS 197.175(2)(e); *Ludwick v. Yamhill County*, 72 Or App 224, 231, 696 P2d 536, *rev den*, 299 Or 443 (1985). Thus, a PAPA may be reviewed for compliance with a land use goal if the amendment implicates that land use goal. *See Opus Development Corp. v. City of Eugene*, 141 Or App 249, 254, 918 P2d 116 (1996) (allowing review of a PAPA for compliance with Goal 9 when the amendment affected the local government's Goal 9 land inventory). Even unamended portions of a plan may be reviewed for compliance with the goals as a consequence of a PAPA because that "plan amendment *could* affect provisions of the plan that it does not directly change in such a way that they will have an application which is at odds with the goals and which they did not have at the time of acknowledgment." *1000 Friends of Oregon v. Jackson Co.*, 79 Or App 93, 98, 718 P2d 753 (1986) (emphasis in original).

However, in *Urquhart v. Lane Council of Governments*, 80 Or App 176, 181-82, 721 P2d 870 (1986), we held that a statewide goal is only implicated for review purposes if the PAPA itself affects the goal, either directly or indirectly. Under the *Urquhart* rule, a PAPA is not reviewable "on the basis of a defect in the inventory which is not directly or indirectly attributable to the plan amendment." *Id.*

An exception to the *Urquhart* rule arises if a local government adopts a PAPA with the purpose of achieving compliance with rules "promulgated [by LCDC] in relevant part *after* the county's preexisting plan and ordinance provisions were acknowledged." *Dept. of Transportation v. Douglas County*, 157 Or App 18, 20, 967 P2d 901 (1998) (emphasis added). In such a case, LUBA may review whether the local government's legislation complies with the statewide goals as a whole. *Id.* at 23-24. Petitioner does not contend that the rules at issue in this case were promulgated after the county adopted its acknowledged plan.

D.   *History of the Subject Property and Tumalo Irrigation District's Application to Deschutes County*

The subject property is a 541-acre property in rural Deschutes County. The property was acquired by the county in 1932 and was used for mining beginning in or before 1947. On the county's earliest zoning map, the property was zoned Surface Mining (SM).

The county has conducted three agricultural inventories since acquiring the subject property. First, in 1978, the county adopted by ordinance an initial inventory of agricultural lands. Next, in 1979, the county adopted its comprehensive plan. The 1979 comprehensive plan was acknowledged by LCDC. Finally, in 1992, the county inventoried its agricultural lands again as part of a periodic review. The periodic review was also acknowledged.

The subject property was not included in the agricultural lands inventory at any point, nor was it ever zoned EFU. From the time of the 1979 Comprehensive Plan adoption and acknowledgment to the time of Tumalo Irrigation District's application for a plan amendment and zoning change, the subject property was designated as SM.

Tumalo Irrigation District applied to the county to amend the plan designation of the property from SM to Rural Residential Exception Area (RREA) and to rezone the property from SM to Multiple Use Agricultural (MUA-10).

A county hearings officer denied the application, finding that, although the proposed amendment did not require a Goal 3 exception because the property was not

agricultural land, the application was not properly supported by information about the impacts of the amendment on surrounding land use. Both Tumalo Irrigation District and Central Oregon Landwatch appealed the hearings officer's decision to the county's board of commissioners. Tumalo Irrigation District contested the rejection of its application, and Central Oregon Landwatch contested the finding that no Goal 3 exception was required. Central Oregon Landwatch asserted that an exception was required because NRCS maps showed that the property's soils were of the classifications that meet the definition for agricultural lands.

On appeal, the county reversed the hearings officer's decision and approved the application. The county found that, because the property was not designated as agricultural land in the county's acknowledged comprehensive plan, it was not subject to Goal 3 and therefore no exception was required. Additionally, the county found it significant that

"[s]ubsequent to initial adoption of this zone and Comprehensive Plan designation, the [c]ounty rezoned several 'resouce lands' to [SM] when the mineral resource on the land qualifies as a Goal 5 resource. The [Economic, Social, Environmental, and Energy (ESEE) analysis] for those [SM] sites specify a post[-]mining use and zoning designation consistent with the prior zoning *** [, and] the [county] finds that the prior zoning and ESEE for a mining site are instructive for determining future zoning. If the ESEE specifies resources uses as the post-mining uses and zoning, then the applicable resource use is the appropriate zoning unless the applicant can otherwise demonstrate that the subject property does not qualify as resource lands or is eligible for an exception to the applicable resource goal. Where the ESEE is silent, and there are no other indicators of a resource designation, then the subject property is not considered resource lands under the [c]ounty's Comprehensive Plan and is eligible for a non-resource zoning designation without the need to take any exception to the resource goals."

The ESEE for the subject property did not include any discussion of post-mining uses, including specifying EFU zoning as is required for agricultural lands.

E.  *The LUBA Appeal*

Petitioner appealed the county's decision to LUBA.[1] Before LUBA, petitioner assigned error to multiple aspects of the county's decision, but only one issue is now presented to us: whether the county was required to revisit its prior determinations that the subject property was not agricultural land and either include it in its Goal 3 inventory or seek an exception. Petitioner argued that the soils of the subject property were indisputably classified by NRCS as types of soil that are required by Goal 3 to be inventoried as agricultural land.[2] In petitioner's view, the NRCS classification must be applied as a matter of law.

In response, respondents both disputed the validity of the NRCS map petitioner offered and argued that the application of the NRCS data was inapposite because the county had already determined in its prior land inventories that the property was not agricultural land. Respondents contended that the subject property was not agricultural land because "Goal 3 obligates counties to inventory agricultural lands within their jurisdiction [and t]he record is clear that Deschutes County determined the subject property is not agricultural land on three separate occasions[:]" during the adoption of the 1978 interim ordinance, the inventory for the 1979 comprehensive plan, and the 1992 periodic review.

LUBA concluded that "the county, having previously determined that the property [was] not agricultural land, was not required to revisit whether the property is agricultural land." In reaching its conclusion, LUBA relied on its decision in *Caldwell v. Klamath County*, 45 Or LUBA 548 (2003), *aff'd without opinion*, 192 Or App 162, 86 P3d 118 (2004), which in turn relied on our decision in *Urquhart*. In *Caldwell*, the petitioners appealed a county's PAPA and zone change that changed the subject property's plan designation from Non-Resource (NR) to Rural Residential (RR-10) without taking an exception to Goal 3. *Id.* at 550. The

---

[1] Petitioner was joined by intervenor-petitioners Thomas and Dorbina Bishop, Trustees of the Bishop Family Trust, who are not before us on judicial review.

[2] Petitioner presented an NRCS map classifying the soils of the subject property as Class III or Class IV.

petitioners in *Caldwell* argued that a PAPA requires application of all the statewide planning goals and, therefore, the county must address whether the property included agricultural land within the meaning of Goal 3. *Id.* Further, because there was evidence that the subject property was of the type required to be inventoried under Goal 3, including evidence that it contained predominately Class II-VI soils, the petitioners argued that "the county must find that the property includes agricultural land subject to Goal 3." *Id.* at 551.

LUBA, applying *Urquhart*, determined that the question before it was "whether the proposed zoning affects the county's original determination that the subject property does not include 'agricultural land' in a manner that affects the county's compliance with Goal 3." *Id.* at 552. LUBA concluded that the PAPA did not affect the county's compliance with Goal 3 because, even if the county was mistaken in its original inventory or LCDC was mistaken in acknowledging the plan that excluded the subject property from the inventory, the PAPA at issue did not affect the county's compliance with Goal 3. *Id.* Neither NR nor RR-10 properties implicated Goal 3, so a change in designation between them did not implicate it either.

### III.   ANALYSIS

Petitioner timely petitioned for judicial review of LUBA's order. On judicial review, petitioner assigns error to LUBA's conclusion that the county's PAPA complies with Goal 3 and its implementing regulations. Petitioner argues that the county must apply the Goal 3 definition of agricultural land to the subject property before changing its designation, regardless of its prior determinations that the property was not agricultural land. In light of the NRCS map showing the soils on the property as Class III-IV, petitioner further contends that the property is agricultural land as a matter of law, and the county must either include it in its Goal 3 inventory or take an exception.

Further, petitioner argues that LUBA relied on *Urquhart* in error. In *Urquhart*, a county amended its acknowledged plan to create and apply a new land use designation. 80 Or App at 178. On appeal, LUBA remanded

"on the ground that [the local government's] findings did not adequately demonstrate why the area affected by the amendment should not be added to the plan's Goal 5 inventory as an open space site." *Id.* On judicial review, we noted that, although the property "was not included on the plan's original Goal 5 inventory that was acknowledged by LCDC," the area was "designated 'open space' on the plan diagram, and there was evidence *** that that was an appropriate designation." *Id.* at 178-79.

The county in the *Urquhart* case argued that it should not have to reconsider the exclusion of property from its acknowledged inventory as part of the plan amendment process. *Id.* at 179. However, LUBA reasoned that a property's absence from an inventory should not preclude a later determination that the property should be inventoried. *Id.* We acknowledged that both positions have merits and problems: requiring a reevaluation of each goal with every PAPA would make the plan amendment process much more burdensome and complex, while precluding that reevaluation could prevent the correction of possible errors in local governments' acknowledged inventories. *Id.* at 179-80.

We concluded in *Urquhart* that PAPAs are not reviewable for potential goal noncompliance that is not "a consequence of the amendment." *Id.* at 181. Because the property in *Urquhart* was "excluded from the [county's Goal 5] inventory before the amendment was enacted, and the amendment [did] not affect the inventory," the PAPA did not implicate Goal 5, and the PAPA was not reviewable for compliance with that goal. *Id.* at 180-81. We also noted that review of whether properties that are currently excluded from inventories should be included in them can be accomplished through LCDC's periodic review process. *Id.* at 181. Moreover, periodic review is "the *only* method for correcting goal noncompliance that results from changes in circumstances after acknowledgement, when the noncompliance is not the product of an amendment to an acknowledged plan or land use regulation." *Id.* (Emphasis added.)[3]

---

[3] We examined the *Urquhart* rule in *Johnson v. Jefferson County*, 221 Or App 156, 189 P3d 30, *rev dismissed*, 347 Or 259 (2009). In *Johnson*, LUBA relied on our decision in *Urquhart* in determining that counties are required

Petitioner contends that differences between Goals 3 and 5 render our *Urquhart* rule inapposite to challenges to PAPAs under Goal 3.[4] Petitioner asserts that the holding in *Urquhart* is limited to challenges under Goal 5 because it is premised on the particular administrative framework of that goal. Petitioner contends that "Goal 5 directs local governments to make local choices about which Goal 5 resources to protect," in contrast with Goal 3's statewide definition of agricultural land. We reject that distinction for the following reasons.

First, the Goal 5 standards for a county determining what land to include in its Goal 5 inventory were not a basis for our decision in *Urquhart*, nor did we limit our holding to that goal. Instead, our decision was based on the fact that the subject property was excluded from the inventory before the PAPA at issue in that case, and the PAPA did not affect the inventory. Second, the principle from *Urquhart*— that a potential defect in an acknowledged inventory that is not attributable to a PAPA does not provide a basis to review that PAPA—is a general one. Moreover, periodic review, the remedy we identified when changes in circumstances, other than from a PAPA, have brought an acknowledged inventory out of compliance, is also applicable to all the statewide planning goals. While some goals may have rules that mandate more frequent reviews or updating of inventories, Goal 3 does not have any such additional rules with regard to

---

to update their Goal 5 inventories during periodic reviews, but not PAPAs. *Id.* at 161. The petitioners in that case asked that we reconsider the holding of *Urquhart* because "periodic review now occurs less frequently than was the case when *Urquhart* was decided," now occurring on a schedule established by LCDC rather than every five years. *Id.* at 163. We acknowledged that "land use laws in general, and the statutes and rules pertaining to periodic review in particular, have evolved considerably since *Urquhart* was decided." *Id.* The *Urquhart* rule was effectively codified under Goal 5 in OAR 660-023-0250, so we did not reconsider it in *Johnson*. Here, petitioner has not asserted that we should reconsider the holding of *Urquhart*, instead arguing that this case is distinguishable from *Urquhart* for reasons outlined below. We address only petitioner's arguments.

[4] Petitioner also contends that *Urquhart* does not control here because the county is removing land from SM, a Goal 5 inventory; thus, unlike in *Urquhart*, the Goal 5 inventory of the county is affected. We decline to address that argument because petitioner neither assigns error to LUBA's determination that the amendment does not violate Goal 5 nor establishes a connection between an effect on the county's Goal 5 inventory and *Urquhart*'s application to their challenge under Goal 3.

agricultural lands. The reasoning and holding of *Urquhart* are applicable here.[5]

In sum, the county was not required to revisit its prior determination that the subject property is not agricultural land. LUBA correctly stated and applied that principle in its determination that the subject property is not agricultural land subject to Goal 3. Accordingly, we conclude that LUBA's order is not "unlawful in substance."

Affirmed.

---

[5] We observe that LUBA applied *Urquhart* to a Goal 3 challenge in its own decision in *Caldwell*, concluding that a PAPA that changes a property from one non-Goal 3 designation to another non-Goal 3 designation does not implicate Goal 3. Petitioner does not argue that *Caldwell* was wrongly decided, only that it is distinguishable from this case. As far as LUBA relied on its reasoning in *Caldwell* to make its decision in this case, we agree that LUBA interpreted *Urquhart* correctly.