No. 40 January 24, 2024 321

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

CENTRAL OREGON LANDWATCH;
William Buchanan; Elizabeth Buchanan;
Keystone Cattle & Performance Horses, LLC;
Redside Restoration Project One, LLC; Paul J. Lipscomb;
and Department of Land Conservation and Development,
*Respondents,*
*and*

1000 FRIENDS OF OREGON,
*Respondent*
*Cross-Petitioner,*
*v.*

DESCHUTES COUNTY,
*Cross-Respondent,*
*and*

710 PROPERTIES, LLC
and Charles Thomas,
*Petitioners*
*Cross-Respondents,*
*and*

Robert TURNER,
*Cross-Respondent.*

Land Use Board of Appeals
2023006, 2023009; A182073

Argued and submitted October 27, 2023.

J. Kenneth Katzaroff and D. Adam Smith argued the cause and filed the briefs for petitioners-cross-respondents 710 Properties, LLC, and Charles Thomas, and for cross-respondent Robert Turner. Also on the briefs were Bailey M. Oswald and Schwabe Williamson & Wyatt P.C.

Robert M. Wilsey argued the cause for respondent Department of Land Conservation and Development. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Andrew Mulkey argued the cause and filed the briefs for respondent-cross-petitioner 1000 Friends of Oregon.

Carol E. Macbeth filed the brief for respondent Central Oregon Landwatch.

Jeffrey L. Kleinman filed the brief for respondents William Buchanan, Elizabeth Buchanan, and Keystone Cattle & Performance Horses, LLC.

D. Adam Smith, J. Kenneth Katzaroff, Bailey M. Oswald, and Schwabe Williamson & Wyatt P.C. filed the brief for respondents 710 Properties, LLC, and Charles Thomas.

James D. Howsley and Jordan Ramis PC filed the brief for respondent Redside Restoration Project One, LLC.

David Doyle filed the brief for cross-respondent Deschutes County.

No appearance for respondent Paul J. Lipscomb.

Before Egan, Presiding Judge, and Kamins, Judge, and DeVore, Senior Judge.

KAMINS, J.

Affirmed; motion to strike DLCD's reply brief denied as moot.

**KAMINS, J.**

This land use case concerns the application of 710 Properties, LLC, to redesignate and rezone 710 acres of land in Deschutes County (the subject property). Specifically, 710 Properties seeks (1) the designation of the subject property to be changed from "Agricultural" to "Rural Residential Exception Area" (RREA), and (2) the zoning of the subject property to be changed from "Exclusive Farm Use"[1] (EFU) to "Rural Residential - 10 Acre Minimum" (RR-10). Those changes would allow the subject property to be used for rural, residential uses, instead of the uses to which it is currently limited.

In the proceedings below, a hearings officer recommended that the Deschutes County Board of Commissioners (the county) approve 710 Properties' application. The county considered and approved the application. The Land Use Board of Appeals (LUBA) then remanded the county's decision on various grounds.

In this proceeding for judicial review of LUBA's order, petitioner 710 Properties raises three assignments of error, petitioner Thomas raises four assignments of error, cross-petitioner 1,000 Friends of Oregon raises one assignment of error, and respondent the Department of Land Conservation and Development (DLCD) raises a single cross-assignment of error. We reject each of those assignments.[2] We write, however, to address Thomas's first assignment of error, which challenges LUBA's interpretation of OAR 660-033-0020(1)(a)(C).

As explained further below, OAR 660-033-0020 (1)(a)(C) defines "agricultural land" under Goal 3 of Oregon's Statewide Planning Goals to include "[l]and that is necessary to permit farm practices to be undertaken on adjacent

_____

[1] The current zoning of the property is "Exclusive Farm Use-Terrebonne-Subzone." Terrebonne is an unincorporated community in Deschutes County. For the purposes of this opinion, we simply refer to the zoning as "Exclusive Farm Use."

[2] We note that petitioners have moved to strike the reply brief DLCD filed in support of its cross-assignment of error. Because the relief DLCD seeks is not available via a cross-assignment of error, *State v. Clayton*, 210 Or App 442, 446-47, 150 P3d 1078 (2007), *Murray v. State of Oregon*, 203 Or App 377, 388, 124 P3d 1261 (2005), *rev den*, 340 Or 672 (2006), we reject DLCD's cross-assignment, and deny the motion to strike as moot.

or nearby agricultural lands." In Thomas's view, the test under that rule is whether the physical land itself is "necessary to permit farm practices to be undertaken on adjacent or nearby agricultural lands." LUBA concluded that the rule "asks not only whether the land itself is necessary to permit farm practices on adjacent or nearby lands but, also, whether the land's resource designation and zoning, and the presumed lack of impacts or conflicts with farming on adjacent or nearby lands, are necessary to permit farm practices on adjacent or nearby lands." For the reasons below, we agree with LUBA. Therefore, we affirm.

## I.   BACKGROUND

The subject property consists of nine tax lots totaling 710 acres in Deschutes County. It is over four miles outside of the City of Redmond's urban growth boundary. The property is designated in the Deschutes County Comprehensive Plan (DCCP) as "agricultural" land and zoned as EFU. Given that designation, permissible uses of the land are limited. *See, e.g.*, OAR 660-033-0120 Table, *available at* https://www.oregon.gov/lcd/LAR/Documents/div033_use-table.pdf (accessed Jan 16, 2024) (describing permissible uses of agricultural land).

710 Properties applied for a "post-acknowledgement plan amendment" to change the plan designation of the subject property in the DCCP from "agricultural" to RREA and the zoning from EFU to RR-10. Those changes in designation would allow the subject property to be used for rural, residential uses, instead of the uses to which is it currently limited.[3]

In its application for redesignation and rezoning, 710 Properties addressed the definition of agricultural land in OAR 660-033-0020(1)(a)(C)—which, as noted above, defines "agricultural land" to include "[l]and that is necessary to permit farm practices to be undertaken on adjacent or nearby

---

[3] As the county explained in its approval of 710 Properties' application for redesignation of the subject property, when Deschutes County amended the DCCP in 2016, it made the "determination that the RREA plan designations *** should apply to non-agricultural land." RREAs "provide opportunities for rural residential living outside urban growth boundaries and unincorporated communities."

agricultural lands"—and asserted that the land was not agricultural land. In addressing OAR 660-033-0020(1)(a)(C) in its application, 710 Properties described the current EFU zoned properties near the subject property, listed their current uses, and explained why none of them needed the subject property in order to permit farm practices.

In response to 710 Properties' application, DLCD, the Department of Fish and Wildlife, and the Department of Agriculture submitted a letter recommending that the subject property "retain an Exclusive Farm Use designation and not be converted to allow rural residential development." Regarding OAR 660-033-0020(1)(a)(C), those state agencies explained their view that 710 Properties' assertion that the subject property was not "necessary to permit farm practices to be undertaken on adjacent or nearby agricultural lands" was not "supported by any comprehensive evaluation of the farming and ranching practices that are associated with existing and potential future farm uses in the surrounding area." The state agencies raised concerns regarding, among other points, potential traffic impacts, water supply issues, and the potential for trespassing, that could be caused by redesignation.

The hearings officer who initially considered 710 Properties' application found that 710 Properties "met the burden of proof necessary to justify the request for a Comprehensive Plan Map Amendment to re-designate the subject property from Agriculture to Rural Residential Exception Area and a corresponding request for a Zone Map Amendment to reassign the zoning of the subject property from Exclusive Farm Use (EFU) to Rural Residential." Accordingly, the hearings officer recommended that the county approve the application.

The county subsequently approved 710 Properties' application. Concerning OAR 660-033-0020(1)(a)(C), the county noted that "[t]he State agencies raised the issue of traffic impacts related to the Goal 3 issue of whether land is necessary to permit farm practices to be undertaken on nearby lands." It concluded, however, that "[t]raffic issues are not *** a relevant consideration in addressing this issue because [the issue is] whether the 'land' to be rezoned, the

subject property, is needed by area farms to conduct farm practices on their properties."

The county's decision was then appealed to LUBA by, among others, 1000 Friends of Oregon. Before LUBA, 1000 Friends argued that the county misconstrued OAR 660-033-0020(1)(a)(C). Specifically, 1000 Friends argued that land is "necessary to permit farm practices on adjacent or nearby lands if the impacts from the nonresource use of the land would prevent farm practices on adjacent or nearby lands." Thomas responded that the county did not misconstrue OAR 660-033-0020(1)(a)(C), because that "rule asks whether the land *itself* is necessary to permit farm practices on adjacent or nearby lands, not whether the land's *agricultural designation and zoning*, and the consequent lack of impacts, are necessary to permit farm practices on adjacent or nearby lands." (Emphases in LUBA's Order.)

LUBA disagreed with Thomas. It concluded that OAR 660-033-0020(1)(a)(C) "asks not only whether the land itself is necessary to permit farm practices on adjacent or nearby lands but, also, whether the land's resource designation and zoning, and the presumed lack of impacts or conflicts with farming on adjacent or nearby lands, are necessary to permit farm practices on adjacent or nearby lands." It further explained that "although 'necessary' is a high standard, and some conflicts may be allowed, * * * the [county] erred in concluding that traffic impacts are not a relevant consideration." Ultimately, LUBA remanded for further proceedings, concluding that the county's findings that the subject property is not necessary to permit farm practices on adjacent or nearby lands under OAR 660-033-0020(l)(a)(C) were inadequate.[4]

Thomas now seeks judicial review of LUBA's order.

_____

[4] LUBA noted that the county did make findings regarding traffic impacts, but concluded that those findings were inadequate because the county did not "set out the facts which the [county] believed and relied upon or explain how those facts led to the [county's] conclusion."

Additionally, LUBA highlighted that the county's findings did not address "water, nuisance, or trespass impacts, despite the state agency letter" raising those issues.

## II.   ANALYSIS

On judicial review, in Thomas's first assignment of error, he argues that "LUBA incorrectly created an impacts test out of OAR 660-033-0020(1)(a)(C) that simply is not contained in the law." As Thomas sees it, the test under OAR 660-033-0020(1)(a)(C) is whether the land itself is "necessary to permit farm practices to be undertaken on adjacent or nearby agricultural lands." DLCD responds that "LUBA correctly construed OAR 660-033-0020(1)(a)(C) to require an evaluation of the impacts that redesignating and rezoning land from agricultural to nonresource will have on adjacent or nearby lands and a determination of whether those impacts will prevent farm practices on those lands." (Internal quotation marks omitted.) Thus, in respondents' view, as one set of respondents puts it, "LUBA applied the test as written, and remanded so the county could do what it failed to do in the appealed decision: evaluate whether the additional residential traffic that would result from the conversion of the subject property from agricultural to residential use would permit the continuation of farm practices on the adjacent agricultural land."

As to the assignment of error addressed in this opinion, our task is to discern whether LUBA's order is "unlawful in substance." ORS 197.850(9)(a); *Schaefer v. Marion County*, 318 Or App 617, 620, 509 P3d 718 (2022). An order is unlawful in substance if it represents "a mistaken interpretation of the applicable law." *Schaefer*, 318 Or App at 620 (internal quotation marks omitted). When our review requires interpretation of an administrative rule, as in this case, "we seek to divine the intent of the rule's drafters" by considering "the text of the rule in its regulatory and statutory context." *Id.* (internal quotation marks omitted).

A.   *Agricultural Land*

Prior to turning to the rule at issue in this case, OAR 660-033-0020(1)(a)(C), it is useful to describe the statutory and regulatory context within which OAR 660-033-0020(1)(a)(C) is situated—*viz.*, Oregon's statutory and regulatory framework declaring and implementing its policy for the maintenance and preservation of Oregon's limited

supply of agricultural land. *See Schaefer*, 312 Or App at 337 (beginning analysis of the meaning of administrative rule "by considering the statutory and regulatory context").

### 1. *Statutory context*

"The legislature's primary statement of agricultural land use policy is contained in ORS 215.243, which has remained unchanged since its enactment as part of Oregon's statewide land use planning system in 1973." *Stop the Dump Coalition v. Yamhill County*, 364 Or 432, 441-42, 435 P3d 698 (2019). That statute "finds and declares" that "preservation of agricultural land, particularly in large blocks, is an important statewide policy and that limitations on urban expansion into, and alternative uses of, agricultural and forest lands are necessary and a matter of statewide concern." *Stop the Dump Coalition*, 364 Or at 442. It provides, in pertinent part:

"The Legislative Assembly finds and declares that:

"* * * * *

"(2)    The preservation of *a maximum amount of the limited supply of agricultural land is necessary* to the conservation of the state's economic resources and *the preservation of such land in large blocks is necessary* in maintaining the agricultural economy of the state and for the assurance of adequate, healthful and nutritious food for the people of this state and nation.

"(3)    Expansion of urban development into rural areas is a matter of public concern because of the unnecessary increases in costs of community services, *conflicts between farm and urban activities* and the loss of open space and natural beauty around urban centers occurring as the result of such expansion.

"(4)    Exclusive farm use zoning as provided by law, substantially limits alternatives to the use of rural land and, with the importance of rural lands to the public, justifies incentives and privileges offered to encourage owners of rural lands to hold such lands in exclusive farm use zones."

ORS 215.243 (emphases added). Further, the legislature's "policy for dwellings on farm and forest lands, set out in [ORS 215.700], similarly seeks to '[l]imit the future division

of and the siting of dwellings upon the state's more productive resource land.'" *Stop the Dump Coalition*, 364 Or at 442 (quoting ORS 215.700(2); second brackets in *Stop the Dump Coalition*).

### 2.  *Regulatory context*

To effectuate those statutory policies, the legislature has directed the Land Conservation and Development Commission (LCDC) "to implement Oregon statutes by adopting land use planning goals that set out broad objectives for land use planning in Oregon." *Id.* at 443 (internal quotation marks omitted). Relevant to this petition for judicial review is Goal 3, which recognizes the legislature's directive concerning the importance of the preservation of agricultural lands as set forth in ORS 215.243 and ORS 215.700. "Goal 3 both (1) promotes preservation of agricultural land for 'farm use' and 'maximum agricultural productivity' and (2) limits nonfarm uses of agricultural lands to those 'that will not have significant adverse effects' on accepted farming or forest practices." *Stop the Dump Coalition*, 364 Or at 444.

Goal 3 provides, in pertinent part:

**"To preserve and maintain agricultural lands.**

"Agricultural lands shall be preserved and maintained for farm use, consistent with existing and future needs for agricultural products, forest and open space and with the state's agricultural land use policy expressed in ORS 215.243 and 215.700.

**"USES**

"Counties may authorize farm uses and those nonfarm uses defined by commission rule that will not have significant adverse effects on accepted farm or forest practices.

**"IMPLEMENTATION**

"Zoning applied to agricultural land shall limit uses which can have significant adverse effects on agricultural and forest land, farm and forest uses or accepted farming or forest practices.

"* * * * *

**"GUIDELINES**

"*****

**"B.   IMPLEMENTATION**

"1. Non-farm uses permitted within farm use zones under ORS 215.213(2) and (3) and 215.283(2) and (3) [which set forth certain land uses allowed in lands zoned for 'exclusive farm use'] should be minimized to allow for maximum agricultural productivity."

LCDC also has adopted administrative rules to implement Oregon statutes concerning agricultural land and "preserve and maintain agricultural lands as defined by Goal 3 for farm use[.]" OAR 660-033-0010; *see generally* OAR ch 660, div 33 (regarding agricultural land). One such rule, OAR 660-033-0020(1)(a), is central to this review. OAR 660-033-0020(1)(a) provides that "agricultural land" as defined in Goal 3 includes land with certain soil types, land that is "suitable for farm use," and, as relevant here, "[l]and that is necessary to permit farm practices to be undertaken on adjacent or nearby agricultural lands."[5] Land that meets that definition must be inventoried as "agricultural land," OAR 660-033-0030(1), and LCDC rules limit the uses that are permitted on such land, *e.g.*, OAR 660-033-0120.

B.   *OAR 660-033-0020(1)(a)(C)*

With that understanding of the statutory and regulatory context concerning the maintenance and preservation of agricultural land within which OAR 660-033-0020(1)(a)(C) was implemented, we turn to the rule itself.

---

[5]  OAR 660-033-0020(1) provides:

"(a) 'Agricultural Land' as defined in Goal 3 includes:

"(A) Lands classified by the U.S. Natural Resources Conservation Service (NRCS) as predominantly Class I-IV soils in Western Oregon and I-VI soils in Eastern Oregon;

"(B)  Land in other soil classes that is suitable for farm use as defined in ORS 215.203(2)(a), taking into consideration soil fertility; suitability for grazing; climatic conditions; existing and future availability of water for farm irrigation purposes; existing land use patterns; technological and energy inputs required; and accepted farming practices; and

"(C) Land that is necessary to permit farm practices to be undertaken on adjacent or nearby agricultural lands."

OAR 660-033-0020(1)(a)(C) defines "agricultural land" as "[l]and that is necessary to permit farm practices to be undertaken on adjacent or nearby agricultural lands." LUBA concluded that OAR 660-033-0020(1)(a)(C) requires consideration of both whether "the land itself" and "the land's resource designation and zoning" are necessary to permit farm practices on adjacent or nearby lands. As Thomas sees it, that interpretation represents a mistaken understanding of applicable law, because the test under OAR 660-033-0020(1)(a)(C) is only whether the physical land itself is necessary to permit farm practices on adjacent and nearby lands, and it does not include whether the land's resource designation and zoning are also so necessary.

The dispute in this case turns on the meaning of the phrase "land that is necessary to permit farm practices to be undertaken on adjacent or nearby agricultural lands" in OAR 660-033-0020(1)(a)(C).

In this case, we think context provides an understanding of the text of OAR 660-033-0020(1)(a)(C) in determining whether a parcel qualifies as "agricultural land" under OAR 660-033-0020(1)(a)(C).

OAR 660-033-0020(1)(a)(C) is part of, and was intended to implement, Oregon's statutory and regulatory scheme for statewide land use planning for Oregon's limited supply of agricultural land. That scheme, as a whole, makes up the relevant context for our analysis. *See State v. Klein*, 352 Or 302, 309, 283 P3d 350 (2012) (a statute's context includes related statutes); *Havi Group LP v. Fyock,* 204 Or App 558, 564, 131 P3d 793 (2006) ("Included in pertinent context are statements of statutory policy.").

As set forth above, that statutory and regulatory scheme (1) is predicated on an express policy goal of preserving the "maximum amount of the limited supply of [Oregon's] agricultural land," and preserving such land for "farm use" and "maximum agricultural productivity," ORS 215.243, *Stop the Dump Coalition*, 364 Or at 444; (2) expressly recognizes that how a parcel is used can conflict with the viability of farm uses on nearby parcels, *e.g.*, ORS 215.243; and (3) is designed with safeguards to limit use of land designated as

*agricultural land* in ways that conflict with farm uses, *e.g.*, *Stop the Dump Coalition*, 364 Or at 444 (recognizing that Goal 3 "limits nonfarm uses of agricultural lands to those 'that will not have significant adverse effects' on accepted farming or forest practices"), Goal 3 (mandating that "[z]oning applied to agricultural land shall limit uses which can have significant adverse effects on agricultural and forest land, farm and forest uses or accepted farming or forest practices").

In view of that that statutory and regulatory scheme, which OAR 660-033-0020(1)(a)(C) was intended to help implement, we think it likely that when LCDC adopted OAR 660-033-0020(1)(a)(C), LCDC intended that a parcel be designated as "agricultural land" if such designation and the accompanying zoning is "necessary to permit farm practices to be undertaken on adjacent or nearby agricultural lands," OAR 660-033-0020(1)(a)(C), thereby preserving such adjacent and nearby agricultural land for "farm use" and "maximum agricultural productivity," in accordance with this state's policy regarding agricultural lands. That interpretation is also in keeping with Oregon's recognition that many non-agricultural land uses—uses that would be permissible if land designated as agricultural land was redesignated as non-agricultural land—may conflict with nearby farm uses. And that interpretation makes use of the safeguards in Goal 3 (and the administrative rules implementing Goal 3) that limit use of agricultural land in ways that conflict with farm uses.

Our conclusion becomes apparent if one considers the result of the interpretation advanced by Thomas that OAR 660-033-0020(1)(a)(C) asks only whether the land itself is "necessary to permit farm practices on adjacent or nearby agricultural lands" not whether the land's resource designation and zoning are so necessary. Thomas's interpretation of OAR 660-033-0020(1)(a)(C) would be no barrier to redesignation and rezoning even if traffic impacts, for example, caused by a redesignation of the subject property as non-agricultural land would wholly prevent farm uses on adjacent and nearby agricultural land. That result would operate to reduce, not preserve, Oregon's limited supply of

farmland, contrary the purpose of the statutory and regulatory scheme of which OAR 660-033-0020(1)(a)(C) is a part, and which it was adopted to help implement.

Consequently, we agree with LUBA that consideration of whether land is "agricultural land" under OAR 660-033-0020(1)(a)(C) must include consideration of whether the land's resource designation and zoning is "necessary to permit farm practices to be undertaken on adjacent or nearby agricultural lands."[6]

Having reached that conclusion, we note that we also agree with LUBA that "necessary to permit farm practices on adjacent or nearby agricultural lands" is a "high standard." *Webster's Third New Int'l Dictionary* 1510 (unabridged ed 2002) ("necessary" means "whatever is essential for some purpose" and "things that must be had"). That is, we do not understand land to be agricultural land under OAR 660-033-0020(1)(a)(C) merely because its designation as such would merely be "useful" or "desirable" for nearby farm practices. Rather, for "land" to be agricultural land under OAR 660-033-0020(1)(a)(C), that land, considering its resource designation and zoning, must truly be necessary to adjacent and nearby farm practices.

### III. CONCLUSION

In sum, we conclude that LUBA did not err in construing OAR 660-033-0020(1)(a)(C) and, consequently, did not err when it concluded that the county erred when it determined that "[t]raffic issues are not *** a relevant

---

[6] That conclusion also accords with the rulemaking agency LCDC's broader role in Oregon's scheme for land use planning: LCDC establishes and implements "statewide polices for land use through the adoption of planning goals," local governments then "adopt comprehensive plans that comply with the statewide goals and submit those plans to LCDC for review," and LCDC, after reviewing comprehensive plans, "determines if they are in compliance with the statewide goals." *Central Oregon Landwatch v. Deschutes County*, 301 Or App 701, 703-04, 457 P3d 369, *rev den*, 366 Or 492 (2020). Thus, LCDC establishes, implements, and ensures that land use is in compliance with, statewide land use policies.

Given that role, one would expect that, generally, the rules that LCDC adopts would allow for consideration of permissible uses of parcels of land—*i.e.*, those parcels' resource designation and zoning—rather than to be concerned merely with "the solid part of the surface of the earth," *Webster's Third New Int'l Dictionary* 1268 (unabridged ed 2002) (setting forth definitions of the word "land"), divorced from any legal context within which that solid surface of the earth exists.

consideration in addressing" whether land is agricultural land under OAR 660-033-0020(1)(a)(C). Consequently, we affirm.

Affirmed; motion to strike DLCD's reply brief denied as moot.